Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/16/2019 12:07 AM CDT

Ariana Bernal Sabino, appellant, v.
Juan Carlos Genchi Ozuna, appellee.

___ N.W.2d ___

Filed June 7, 2019.    No. S-18-234.

1. **Affidavits: Appeal and Error.** A district court's denial of in forma
   pauperis status is reviewed de novo on the record based on the tran-
   script of the hearing or written statement of the court.
2. **Affidavits: Evidence.** An analysis of an applicant's eligibility for
   in forma pauperis status will necessarily be dependent on the facts
   and circumstances presented by that applicant's financial and personal
   situation.

Appeal from the District Court for Douglas County: Peter
C. Bataillon, Judge. Reversed and remanded with directions.

Roxana Cortés Reyes, of Immigrant Legal Center, an affili-
ate of the Justice for Our Neighbors Network, and David V.
Chipman, of Monzón, Guerra & Associates, for appellant.

No appearance for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
Papik, and Freudenberg, JJ.

Heavican, C.J.
## INTRODUCTION
The district court entered a decree dissolving the marriage
of Ariana Bernal Sabino and Juan Carlos Genchi Ozuna, but
denied Sabino's petition for findings of fact regarding the

abuse, abandonment, and neglect of her children by Ozuna. Sabino filed a motion to proceed in forma pauperis on appeal. After a hearing, that motion was denied. Sabino has appealed that denial. We reverse the district court's denial of Sabino's request for in forma pauperis status and remand the cause with directions to grant Sabino's motion.

## FACTUAL BACKGROUND

A decree dissolving the marriage of Sabino and Ozuna was entered on January 11, 2018. At that time, the district court denied Sabino's motion seeking findings of fact regarding abuse, abandonment, and neglect of her children by their father, Ozuna.

Sabino filed a notice of appeal on February 6, 2018. Accompanying that notice of appeal was a motion to proceed in forma pauperis. The supporting poverty affidavit stated that Sabino had $200 on hand, no checking or savings account funds, had been unemployed until recently, and listed expenses of $2,842. The affidavit also indicated that she lived with her partner and her four minor children. Sabino further noted that until she had recently obtained employment, her partner had been her "sole provider," and that she was unable to pay the fee or provide security for her appeal.

The district court set a hearing on its own motion, in which it sought information regarding the income of Sabino's partner. The district court noted that it "assume[d] the partner is assisting in these bills, or assisting in some other way. If they're partners, then, I take it, all of his money is her money or all her money is her money or whatever. So that's what I'm asking here."

Information provided at the hearing indicated that Sabino and her four children resided with the partner, but that the couple was not married and that the partner was the biological father of only the youngest child. At the time of the hearing, Sabino had just begun a job that paid $9.75 per hour, explaining that she believed she should eventually earn

approximately $1,690 per month. In addition, questioning from the district court revealed that the couple had two cars, both titled in the partner's name, one of which was driven by Sabino. Monthly expenses addressed at the hearing totaled $2,842 and included rent, utilities, food, telephone, insurance, and payments on medical bills for one of Sabino's children with Ozuna.

Other evidence indicated that Sabino's partner worked three jobs for a total of approximately 80 hours of work per week, earning approximately $3,740 per month. In addition to paying all expenses, the partner sent $600 per month to his parents in Mexico. Evidence at the hearing also suggested that Sabino had begun to work, earning an income so that her partner could quit one of his jobs.

The district court found that appeal expenses would be between $600 and $750 and denied the request of in forma pauperis status. In its oral pronouncement of that decision, the district court explained that Sabino

> has no expenses because he's paying everything. . . . And she's making — going to be making at least $1,690 a month gross income. So the gross income that she's making isn't paying any of the expenses since her partner is paying all of the expenses. Therefore, I'm finding that she's not destitute or not in the condition that she can't pay these fees.

## ASSIGNMENT OF ERROR

Sabino assigns that the district court erred in denying her motion to proceed in forma pauperis.

## STANDARD OF REVIEW

[1] A district court's denial of in forma pauperis status is reviewed de novo on the record based on the transcript of the hearing or written statement of the court.[1]

---

[1] *Mumin v. Frakes*, 298 Neb. 381, 904 N.W.2d 667 (2017).

ANALYSIS

The sole issue on appeal is whether the district court erred in denying Sabino's motion to proceed in forma pauperis status for her appeal of the divorce decree entered on January 11, 2018. We find that the court erred, and accordingly reverse, and remand with directions.

Neb. Rev. Stat. § 25-2301.01 (Reissue 2016) authorizes the district court to grant in forma pauperis status. As relevant to this situation, Neb. Rev. Stat. § 25-2301.02(1) (Reissue 2016) provides that

[a]n application to proceed in forma pauperis shall be granted unless there is an objection that the party filing the application . . . has sufficient funds to pay costs, fees, or security . . . . Such objection may be made by the court on its own motion . . . . An evidentiary hearing shall be conducted on the objection . . . .

[2] The focus of § 25-2301.02 is whether the applicant has sufficient funds. An analysis of an applicant's eligibility will necessarily be dependent on the facts and circumstances presented by that applicant's financial and personal situation. As such, a court should make its determination regarding in forma pauperis status on a case-by-case basis by considering the individual situation of the applicant. In this case, Sabino sought permission to appeal in forma pauperis. On its own motion, the district court challenged Sabino's assertion that she did not have sufficient funds, and accordingly, it held an evidentiary hearing. Following that hearing, the district court denied her motion. In so denying, the district court focused on the facts that Sabino had recently obtained employment and that she resided with a partner who paid her expenses.

We turn first to the court's determination that because Sabino had recently obtained employment, she would soon be able to pay the costs of her appeal. Because of the limited time in which to appeal, we distinguish this case from cases considering whether an applicant has sufficient funds to commence an action in forma pauperis. As a general proposition,

courts should make the appellate in forma pauperis determination by examining the applicant's present ability to pay, and should not base its determination on whether the applicant will have necessary funds in the future or may accumulate funds at a later date.[2] Thus, the district court improperly considered Sabino's future earnings in its determination of forma pauperis status.

In addition to considering Sabino's future income, the district court concluded that Sabino had "no expenses because [her partner's] paying everything." Sabino takes issue with the court's decision "to impute [the partner's] income and/or assets onto [Sabino]."[3]

We acknowledge the existence of case law discussing various approaches to the wholesale imputing of income for in forma pauperis purposes.[4] But we need not address that larger concern, because a review of the district court's decision suggests that it did not impute all of her partner's income to Sabino, but as a practical matter imputed only that portion of his income which was used to pay Sabino's living expenses. On these facts, this limited imputation of income was appropriate.

The record shows that Sabino's partner was supporting his and Sabino's minor child, for whom he has a legal obligation. In addition, Sabino's partner was paying the living expenses of Sabino and her other children, for whom he has no legal

---

[2] See *March v. Municipal Court for San Francisco Jud. Dist.*, 7 Cal. 3d 422, 498 P.2d 437, 102 Cal. Rptr. 597 (1972).

[3] Brief for appellant at 10.

[4] See, e.g., *Lee v. McDonald's Corp.*, 231 F.3d 456 (8th Cir. 2000); *United States v. Stone*, 298 F.2d 441 (4th Cir. 1962); *United States v. Scharf*, 354 F. Supp. 450 (E.D. Penn. 1973); *Hill v. State*, 305 Ark. 193, 805 S.W.2d 651 (1991); *State v. Mettenbrink*, 3 Neb. App. 7, 520 N.W.2d 780 (1994); *State v. Vincent*, 883 P.2d 278 (Utah 1994); *Kelsey v. Hanson*, 818 P.2d 590 (Utah App. 1991); *Todd v. Kohl's Department Store*, No. 08-cv-3827, 2011 U.S. Dist. LEXIS 38427 (N.D. Ill. Sept. 15, 2010) (unpublished opinion).

obligation. In considering whether an applicant has sufficient funds for purposes of § 25-2301.02, it was appropriate for the court to consider the source of the funds for Sabino's living expenses.

But even so, any imputed "income" was offset by the living expenses paid. As the record shows, Sabino had $200 in cash; it was error for the court to consider her future pay. Nor is there any evidence that Sabino had other sources of income or money, including other funds of her partner.

In considering whether an individual is entitled to in forma pauperis status, the district court examines a current snapshot of that individual's financial position, and an appellate court reviews that snapshot de novo. It is possible that if taken at a different time, a different snapshot would emerge. We observe that where such in forma pauperis status is granted, our opinion should not be read to preclude a county—which bears the expenses resulting from that status—from seeking a reexamination of the applicant's eligibility at some later point in the proceeding in light of the then-existing circumstances.

We find persuasive Judge Hannon's conclusions in a case with similar, but perhaps even less sympathetic, facts decided by the Nebraska Court of Appeals:

> The findings of the trial court and the evidence would support a finding that [the applicant's] financial condition would have been better if she had maintained the job she once held, if she had selected her friends more carefully, and if she had not trusted someone who was not worthy of trust. These matters might support a conclusion that she has been improvident, perhaps foolish, but the existence of these attributes does not establish the ability to pay the costs. These matters may help to explain why she cannot pay the costs of the appeal, but they do not tend to establish that she had the ability to pay them.[5]

---

[5] *Fine v. Fine*, 4 Neb. App. 101, 107, 537 N.W.2d 642, 646 (1995).

In our snapshot of this case, Sabino had about $200, while the cost of an appeal was between $600 and $750. Thus, under § 25-2301.02, it is clear that Sabino lacked "sufficient funds to pay costs, fee, or security." As such, the district court erred in denying Sabino's request to proceed in forma pauperis in her appeal from the divorce decree.

## CONCLUSION

The district court's denial of Sabino's motion to proceed in forma pauperis is reversed, and the cause is remanded with directions to grant the motion to proceed in forma pauperis.

REVERSED AND REMANDED WITH DIRECTIONS.